UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ALAN KOEPPEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18 CV 90 RWS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner's decision denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income pursuant to Title XVI, 42 U.S.C. §§ 1381 *et seq*. Because the Commissioner's final decision is not supported by substantial evidence on the record as a whole, I will reverse the decision of the Commissioner and remand for further proceedings consistent with this Memorandum and Order.

## Procedural History

Plaintiff alleged he became disabled as of an amended onset date of October 7, 2015, because of a hernia, broken toes, knee and arm impairments, and

hypertension. At his hearing before the ALJ, plaintiff also testified that he was disabled due to back, shoulder, and hip pain.

Plaintiff's application was initially denied on January 9, 2015. After a hearing before an ALJ on May 2, 2017, the ALJ issued a decision denying benefits on June 30, 2017. On April 11, 2018, the Appeals Council denied plaintiff's request for review. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will reverse the Commissioner's decision.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts set forth in his Statement of Material Facts (ECF #8-1) to the extent admitted by the Commissioner (ECF #13-1). For the reasons discussed herein, however, I decline to adopt the additional facts set forth in paragraph 1 and parts of paragraph 2 of the Commissioner's Statement of Additional Material Facts (ECF #13-2), as they are refuted by plaintiff and not supported by the record. To the extent that the remaining facts set forth in the Commissioner's Statement are unrefuted by plaintiff and supported by the record, I adopt them. The uncontroverted statements adopted by the Court provide a fair

and accurate description of the relevant record. Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working,

disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment(s) is not severe, then he is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform his past relevant work.  If so, the claimant is not disabled.  Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  Determining whether there is substantial evidence requires scrutinizing analysis.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

5

*Id.* at 1322. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 7, 2015. The ALJ found plaintiff to have severe impairments of degenerative joint disease of the right knee with history of total knee arthroplasty in 2011, history of left inguinal hernia surgical repair, and degenerative disc disease, but determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19.) The ALJ found plaintiff to have the RFC to perform a full range of light work. (Tr. 19.) Relying on testimony from a vocational expert, the ALJ found plaintiff capable of performing his past relevant work as a rubber mill operator, bartender, and material handler. (Tr. 22.) The ALJ therefore found plaintiff not to be disabled from his onset date through the date of the decision. (Tr. 23.)

C.    Failure to Develop the Record

Plaintiff argues that the ALJ failed to adequately develop the record because he improperly relied upon someone else's medical history and records in formulating the RFC, which led the ALJ to erroneously conclude that plaintiff had hip replacement and rotator cuff surgery when in fact he had not. (Tr. 20.) The first allegedly erroneous medical record is from Ryan Nunley, M.D., at Washington University Orthopedics and is dated September 17, 2012. (Tr. 452.) This record bears plaintiff's name as the patient and includes his correct birthdate of March 22, 1957. According to Dr. Nunley, plaintiff was seen by him on September 17, 2012, "as a professional courtesy follow up for bilateral total hip arthroplasties performed by me – right one 11/2009 and the left one 1/2010." (Tr. 452.). This record indicates that "x-rays show good component position with metal on metal bilateral total hip arthroplasties. No signs of early loosening or failure. Implant overall looks very good." (Tr. 452.) Plaintiff denies having hip replacement surgery and contends that this medical record, although it purports to be his, is actually for a different patient. As acknowledged by the ALJ, there are no other medical records indicating that plaintiff has ever had hip replacement surgery.

The second erroneous medical record is the report from a consultative examination by Murtaza Hayat, M.D. dated December 3, 2014. (Tr. 448.) In that report, Dr. Hayat indicates that plaintiff "underwent surgery for a torn rotator cuff

7

back in 2011 on this side." (Tr. 448.) Plaintiff denies ever having rotator cuff surgery or telling Dr. Hayat that he had rotator cuff surgery. Again, there are no other medical records indicating that plaintiff has ever had rotator cuff surgery.

At the hearing, the ALJ questioned plaintiff about his alleged hip replacement and rotator cuff surgery as follows:

> ALJ: Well, sir, when you were testifying you said that when you had the right knee replaced, that the doctor told you that you would likely need a total hip replacement within five years. And at 4F, page 2 is says you have them.
>
> PLAINTIFF: I don't know where that came from. I have had no surgeries. She said something about that a while ago and I was like no, that's – that never happened. Barnes-Jewish is where I had my knee replaced and –
>
> ALJ: Right.
>
> PLAINTIFF: -- you know, they were looking at my hip and stuff in x-rays up there, but I never had them replaced.
>
> ALJ: And only the right knee was replaced?
>
> PLAINTIFF: Yes, sir.
>
> ALJ: And the right rotator cuff was operated on in 2011, is that right?
>
> PLAINTIFF: No, sir.
>
> ALJ: What?
>
> PLAINTIFF: No, sir.
>
> ALJ: When was your right shoulder surgery?

>	PLAINTIFF: I've never had surgery on this. I've – my doctor just looked at it one day and said that's probably worse than what you think. And I go well, I don't know and it's never been operated on.
>
>	ALJ: All right, so you did not have right shoulder surgery?
>
>	PLAINTIFF: No, sir.
>
>	(Tr. 119-20.)

Despite plaintiff's insistence at the hearing that he had never had hip replacement or rotator cuff surgery, in his written decision denying benefits the ALJ relied on the 2012 record from Dr. Nunley to support his RFC determination as follows:

> Evidence supporting the residual functional capacity established in this decision includes a September 2012 report authored by orthopedic surgeon, Ryan Nunley, M.D. who in the report, referenced x-rays that showed good component positioning of bilateral total hip arthroplasties without signs of early loosening or failure. However, at hearing, claimant denied ever having these procedures done and there is no other evidence in the record that indicates he had.

(Tr. 20.). The ALJ goes on to note that a medical record from August 14, 2015, indicates that plaintiff's pelvic x-rays were normal and that there was "no mention in the report of the claimant ever having undergone hip replacement surgery." (Tr. 21.) Although the ALJ ultimately assigned little weight to Dr. Hayat's opinion that plaintiff had no work-related limitations, he found that plaintiff complained of "difficulty lifting with his right arm because of a torn rotator cuff that he had repaired in 2011." (Tr. 2.)

9

The ALJ fails to explain why he relied upon the record of Dr. Nunley to support his RFC determination and discounted plaintiff's own testimony and the other medical evidence demonstrating no hip replacement surgery had ever taken place. The ALJ did not request plaintiff's 2015 pelvic x-rays or any additional records or order additional consultative tests to determine whether plaintiff ever had (or would need) hip replacement surgery.

"Social security hearings are non-adversarial, and an ALJ has a duty to fully develop the record, even when the claimant is represented by an attorney." *Johnson v. Astrue*, 627 F.3d 316, 319-20 (8th Cir. 2010) (internal quotation marks and citation omitted). An ALJ should contact a treating or consulting physician if a critical issue is left undeveloped. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). However, "[t]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). Where other evidence in the record provides a sufficient basis for an ALJ's decision, then an ALJ "is permitted to issue a decision without obtaining additional medical evidence." *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (internal quotation marks and citation omitted).

Here, the ALJ substantially erred by failing to adequately develop the record regarding plaintiff's hip pain. In discounting plaintiff's complaints of hip pain, the

ALJ stated that his RFC determination was supported by Nunley's 2012 medical record which showed plaintiff's hips were doing well after hip replacement surgery. Yet plaintiff told the ALJ that he had never had hip replacement surgery, and plaintiff contends that the medical record relied upon by the ALJ belongs to a different person. The ALJ even acknowledged that no other medical evidence of record indicated that plaintiff had hip replacement surgery. Yet instead of requesting additional medical records (such as plaintiff's x-rays) or ordering consultative testing to resolve this inconsistency, the ALJ chose instead to rely on a medical record which appears to belong to a different person without any explanation for his decision. In doing so, he substantially erred. The ALJ never made a credibility determination that plaintiff misrepresented his prior medical history regarding hip replacement surgery, and any such finding would not be supported by substantial evidence in the record as a whole as nothing else in the record indicated that plaintiff had ever had hip replacement surgery.

Here, the ALJ admits he relied upon the medical records and history of someone who may not be the plaintiff to fashion the RFC and deny plaintiff's benefits. Such an error cannot be deemed harmless and requires reversal. The ALJ did not have sufficient medical evidence of the plaintiff on the record as a whole to evaluate plaintiff's severe impairments, and he substantially erred by proceeding to fashion plaintiff's RFC without first determining whether plaintiff

11

had, in fact, ever had hip replacement surgery and whether the medical records upon which he chose to rely were actually that of the plaintiff. Without this minimum amount of information, the ALJ was unable to adequately evaluate the severity of plaintiff's impairments, including his complaints of hip pain, and to determine whether these impairments, whether individually or in combination, met or medically equaled a listed impairment. The record as a whole also does not contain sufficient evidence to support the ALJ's RFC determination where the crucial issue regarding plaintiff's hip pain remains undeveloped.

Upon remand, the ALJ should obtain plaintiff's 2015 pelvic x-rays and any other relevant records relating to plaintiff's hip pain in order to evaluate plaintiff's complaints and determine whether plaintiff underwent hip replacement surgery as found by the ALJ.[1] The ALJ should order any consultative examinations of plaintiff necessary to determine the nature and extent of plaintiff's hip pain and contact plaintiff's treating physician, S. Kent Griffith, M.D., for a determination as to whether his November 9, 2016 medical source statement includes an assessment of plaintiff's hip pain and whether any other additional evidence regarding plaintiff's hip pain alters his assessment of plaintiff's RFC. The ALJ should

---

[1] "[T]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant," *Eichelberger v. Barnhart*, 390 F.3d 584, (8th Cir. 2004), so plaintiff's counsel remains responsible for providing the ALJ with any additional evidence necessary to make a disability determination. This includes evidence demonstrating that plaintiff has not had hip replacement surgery.

consult any additional experts needed to properly assess plaintiff's limitations in order to formulate his RFC and to determine whether plaintiff is capable of performing past relevant work and then reevaluate all of plaintiff's medical evidence under the appropriate standards. The ALJ should also reassess plaintiff's credibility under the standards set forth in *Polaski*, 739 F.2d at 1322. If upon remand the ALJ concludes that plaintiff, in fact, underwent hip replacement surgery, then his decision should include specific credibility findings with respect to this disputed issue with appropriate citations to the record for support. *See Jones v. Chater*, 65 F.3d 102, 104 (8th Cir. 1995) (court is unable to determine whether ALJ's rejection of evidence was based on substantial evidence where ALJ's decision did not address reasons for rejecting evidence). "Initial determinations of fact and credibility are for the ALJ, and must be set out in the decision." *Id.*; *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (noting that while every conflict in the record need not be reconciled by ALJ, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide whether the determination is supported by substantial evidence."). While the Court cannot conclude on this record that plaintiff is disabled, plaintiff deserves a full and fair determination of his claim based upon his own medical history and records, not that of someone else's.

Because the Commissioner's final decision that plaintiff is not disabled is

not supported by substantial evidence on the record as a whole, it is reversed and this case is remanded for further proceedings consistent with this opinion.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is reversed, and this case is remanded for further proceedings consistent with this Memorandum and Order.

A separate Judgment is entered herewith.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 16th day of January, 2019.